**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

HARRY WILLIAM SLONE,

        Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner, Social Security,

        Defendant.

CIVIL ACTION NO.: 2:17-cv-130

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Geoffrey S. Casher ("the ALJ" or "ALJ Casher") denying his claim for a Period of Disability and Disability Insurance Benefits.  Plaintiff urges the Court to reverse and remand the ALJ's decision.  Doc. 13 at 14.  Defendant asserts the Commissioner's decision should be affirmed.  Doc. 14 at 12.  For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

### BACKGROUND

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on February 20, 2014, alleging he became disabled on November 15, 2013, due to Crohn's disease, fibromyalgia, deep vein thrombosis, and anxiety.  Doc. 11-2 at 18; Doc. 11-3 at 2.  After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing.  On July 22, 2016, ALJ Casher conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified from Waycross, Georgia.  Mark Leaptrot, a

vocational expert, also appeared at the hearing.  ALJ Casher found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") since November 15, 2013.  Doc. 11-2 at 18.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  Id. at 2.

Plaintiff, born on July 30, 1984, was 32 years old when ALJ Casher issued his final decision.  Id. at 25, 26.  He has at least a high school education and obtained a five-year degree from a union training program.  Id. at 25, 37.  Plaintiff's past relevant work experience includes work as an electrician helper, construction worker, customer service representative, and security guard.  Id. at 25.

## DISCUSSION

### I.    The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since September 15, 2013, his application date. Doc. 11-2 at 20.  At step two, ALJ Casher determined Plaintiff had Crohn's disease, irritable bowel syndrome, fibromyalgia, anxiety disorder, left shoulder bursitis, and a history of deep vein thrombosis, conditions considered "severe" under the Regulations because "they have more than a minimal effect on" Plaintiff's ability to perform work-related activities.  Id.  However, at the third step, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.  Id. at 21.  The ALJ found Plaintiff had the residual functional capacity to perform work at the light exertional level, with the following exceptions: lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and walking six hours in an eight hour workday with six hours of seated work; occasional bending, balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, but no climbing of ladders, ropes, and scaffolds; occasional bilateral overhead reaching; no exposure to hazardous conditions such as unprotected heights and dangerous machinery; simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes; and avoiding work at production rate pace quota/piece type work.  Id. at 22.  At the next step, the ALJ determined Plaintiff could not perform any of his past relevant work.  Id. at 25.  The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of washing machine attendant, information clerk, and folder, all of which are jobs at the light, unskilled exertional level and which exist in significant numbers in the national economy.  Id. at 26.

## II.   Issue Presented

Plaintiff contends the ALJ failed to address Plaintiff's claim that he could not afford treatment for his Crohn's disease/irritable bowel syndrome when he concluded Plaintiff's testimony was not entirely consistent with the medical evidence.  Doc. 13.

## III.   Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233,

1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV.     Whether Substantial Evidence Supports ALJ Casher's Assessment of Plaintiff's Subjective Complaints in Assessing Plaintiff's Residual Functional Capacity

Plaintiff contends ALJ Casher did not properly assess his subjective complaints of disabling limitations due to his Crohn's disease and irritable bowel syndrome.  Doc. 13 at 11. Plaintiff alleges his medical records prior to the lapse in his insurance in 2014 support his claims of disabling symptoms, particularly his frequent bowel movements requiring him to be away from the work station, whether it was due to his Crohn's disease or irritable bowel syndrome.  Id. at 12.  Plaintiff argues ALJ Casher was incorrect in noting Plaintiff complained about 45 bowel movements a day because the medical records reveal he complained of 4–5 bowel movements a day while receiving treatment and 8–12 times a day when he was unable to afford treatment, and, therefore, the ALJ improperly discounted Plaintiff's credibility.  Id.  Plaintiff additionally maintains remand is required because he alleged that he did not seek treatment because it was unaffordable, and the ALJ failed to adequately address that contention.  Id. at 12.

Defendant responds the ALJ evaluated the intensity and persistence of Plaintiff's symptoms on his ability to work, and substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints regarding his Crohn's disease and bowel issues.  Doc. 14 at 5. Defendant contends the ALJ noted the record evidence showed a diagnosis of Crohn's disease

but also noted that many medical records did not show evidence of an active disease. Specifically, Defendant states Plaintiff sought treatment for diarrhea, abdominal pain, and tenderness several times between January and August 2013, but in May 2014, Plaintiff had normal abdominal and rectal findings and unremarkable imaging results.  Id. at 6.  Additionally, Plaintiff's records from Mayo Clinic failed to show evidence of active bowel issues or significant treatment for the same.  Id. at 6–7.  Defendant argues Plaintiff's assertions ignore ALJ Casher's "express acknowledgements" that Plaintiff alleged various bowel issues in his hearing testimony, Plaintiff was diagnosed with irritable bowel syndrome, and Plaintiff underwent testing that addressed his general bowel issues, not just his Crohn's disease.  Id. at 10.  Moreover, Defendant contends the ALJ acknowledged Plaintiff's insurance lapsed and that the medical evidence that did exist "showed a lack of objective findings of any active inflammatory bowel disease or Crohn's disease."  Id. at 11.  Regarding Plaintiff's contention that the ALJ improperly discounted Plaintiff's credibility due to inconsistencies about the frequency his symptoms, Defendant argues that the language "45 bowel movements per day" in the ALJ's decision may have been a typographical error or a misstatement, but that, regardless, Plaintiff has been inconsistent about the frequency of his symptoms.  Id. at 9, n.2.

        In his Reply, Plaintiff argues his statements about his symptoms have at all times been consistent, contrary to ALJ Casher's misstatement of the record.  Doc. 15 at 2.  Plaintiff also states any deficiencies in the medical record are a product of the inability to afford care for this impairment and that his other impairments were treated through indigent programs not available for his bowel impairment.  Id.  Thus, Plaintiff avers ALJ Casher's credibility finding is not supported by substantial evidence.

To establish disability based on testimony of pain and other symptoms, a claimant must show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming severity of alleged pain, or (b) that the objectively determined medical condition could reasonably be expected to give rise to claimed pain.  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  If a plaintiff "testifies as to his subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms."  Dyer, 395 F.3d at 1210 (quoting Foote v. Chater, 67 F.3d 1553, 1561–62 (11th Cir. 1995)).  "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court."  Id. (internal citation omitted).  An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'"  Id. at 1210–11 (quoting Foote, 67 F.3d at 1561).  Additionally, in determining whether an ALJ's credibility determination is supported by substantial evidence, "[t]he question is not . . . whether the ALJ could have reasonably credited the plaintiff's testimony, but whether the ALJ was clearly wrong to discredit it."  Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011).

In his decision, the ALJ found that "claimant has a history of Crohn's disease."  Doc. 11-2 at 22.  The ALJ observed the March 5, 2013 progress notes from the Medical University of SC Division of Neurology indicated Plaintiff was having issues with nausea, vomiting, and abdominal pain, which appeared to be a flare-up of his Crohn's disease.  Id.  Plaintiff's musculoskeletal examination showed he had normal range of motion and no edema or tenderness of his upper or lower extremities.  Id.  In addition, ALJ Casher noted Plaintiff's February 25,

2013 pelvic MRI did not show evidence of active inflammatory bowel disease.  Id. at 23.  The ALJ noted Plaintiff complained about abdominal pain and a flare-up of his Crohn's disease at the Wayne Memorial Hospital on August 13, 2013, at which time he was diagnosed with abdominal pain, emesis, Crohn's disease with possible acute exacerbation, and a history of left lower extremity deep vein thrombosis.  Id.  A week later, Plaintiff was admitted to the hospital with acute exacerbation of Crohn's disease with complaints of increased abdominal pain with some nausea but no significant vomiting.  Id.  A CT scan showed no acute process.  Plaintiff was diagnosed with Crohn's disease, chronic anticoagulation due to deep vein thrombosis, and hypertension.  Id.  ALJ Casher recounted Plaintiff's progress notes from Headley Family Medicine dated November 14, 2012, through March 21, 2014, which indicated Plaintiff was diagnosed with abdominal pain in his right lower quadrant, Crohn's disease (not otherwise specified), irritable bowel syndrome: hydroureter, right, from his Crohn's disease, and unspecified anxiety.  Id.  An x-ray of January 3, 2014, showed no acute intra-abdominal abnormality.

In consideration of this evidence, ALJ Casher found Plaintiff's medically determinably impairments "could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record . . ."  Id.  However, ALJ Casher concluded there was not enough evidence to support the Crohn's disease diagnosis and repeated needs for bathroom breaks.  Id at 24.  The ALJ noted Dr. William Ginsburg of the Mayo Clinic found no evidence of Crohn's disease after repeated objective evidence was used to seek this diagnosis, and Plaintiff had other studies that did not show evidence of active disease.  In addition, an MRI did not reveal "anything significant."  Id at 23,

24.  Further, the ALJ observed progress notes from Headley Family Medicine provided a diagnosis of anxiety state and irritable bowel syndrome, but emergency room records dated May 25, 2014, showed negative neurological and extremity exams with depressed mood and x-rays of the abdomen.  Plaintiff's mental health records from Pineland for December 8, 2014, through March 29, 2016, revealed Plaintiff's anxiety with complaints of going to the bathroom repeatedly was generally good upon examination, and those examinations were unremarkable.  Id. at 23.  Additionally, the ALJ observed that only "some records" from Wayne Memorial from September 1, 2015, through June 1, 2016, showed evidence of "continued abdominal pain[.]"  Id.

ALJ Casher then turned to Plaintiff's subjective testimony at the hearing, during which time Plaintiff testified he had to take 8 to 12 bathroom breaks a day but did not use adult diapers.  Id.  The ALJ noted that Plaintiff stated he does not go out very often, only for blood draws for his anticoagulant treatment.  Id.  Plaintiff also testified he sees his daughter, uses a computer for research and Facebook, plays video games, used to play poker, and is able to do some simple household chores in between bathroom breaks.  Id.

ALJ Casher considered the third-party function report Plaintiff's sister completed on May 4, 2014, in which Plaintiff's sister stated Plaintiff is in constant pain, had unpredictable bowel movements, and could not do very much housework.  Id.  However, the ALJ found this report to be inconsistent with some of Plaintiff's allegations and with the medical evidence and other evidence of record.  Id. at 24–25.  Finally, ALJ noted Plaintiff's attorney submitted a letter brief in which he argued Plaintiff's severe impairments substantially limit his ability to perform work and maintain pace and concentration.  Specifically, Plaintiff's attorney noted Plaintiff would not be able to do any work at any exertional level for eight hours a day, five days a week because he could not remain at a work station without frequent, sudden bathroom breaks, and his anxiety

and chronic pain prevent Plaintiff from concentrating and maintaining pace for any extended period of time.  Id. at 25.  ALJ Casher determined Dr. Ginsburg—to whom the ALJ gave "great weight"—found no evidence of Crohn's disease, Plaintiff had other studies done that did not show evidence of active disease, and Plaintiff's mental status exams were unremarkable.  Id.

It is evident ALJ Casher did not find Plaintiff's allegations regarding disabling conditions to be credible, as he found Plaintiff's allegations to be contradicted by the record.  ALJ Casher made specific credibility findings, and he considered Plaintiff's medical history as a whole.  Regarding Plaintiff's claims of error, the ALJ's decision does state that Plaintiff complained of "45 bowel movements" a day, which is not consistent with the records the ALJ cited (showing that Plaintiff complained of 4–5 bowel movements per day).  Id.  The ALJ opined this was "in dramatic contradiction" to what Plaintiff testified to during the hearing, which was that he went to the bathroom "at least 8 to 12 times[] a day."  Id. & at 41.  It is unclear whether the ALJ misstated the record (meaning that Plaintiff had, in fact, complained of 45 bowel movements per day), or the ALJ's decision contains a typographical error (meaning the ALJ understood Plaintiff only complained of "4–5" bowel movements per day, but wrote "45").  In either case, the difference between the amount reported in the medical records and the amount Plaintiff testified to at the hearing (8–12 bowel movements per day) would still be a "dramatic."[1]  More importantly, the ALJ's reliance on Plaintiff's previous complaints as to frequency were just one small component of his analysis and was minor in comparison to the other medical record and opinion evidence relied upon by the ALJ.

---

[1]     At the hearing, Plaintiff testified that on a "normal" day, which Plaintiff clarified meant when he was at his "best," he would have 8–12 bowel movements.  Doc. 11-2 at 41.  Compared to the 4–5 incidents Plaintiff previously complained of, a doubling could easily be viewed as a "dramatic" change.

Regarding Plaintiff's claim that the ALJ improperly relied on Plaintiff's lack of insurance, the ALJ committed no error.  First, the ALJ's decision does not demonstrate the ALJ relied on this fact at all.  Rather, the ALJ observed that Plaintiff had not received treatment for certain conditions due to a lack of insurance but said nothing more of the fact.  Doc. 11-2 at 24.  Moreover, the ALJ relied on the evidence of record as a whole to make his determination that Plaintiff was not disabled within the meaning of the Act—not on Plaintiff's alleged inability to afford treatment.  See Ellington v. Berryhill, CV617-072, 2018 WL 1386274 (S.D. Ga. Mar. 1, 2018) ("Although an ALJ may find a plaintiff less credible if [he] failed to seek medical treatment, an ALJ is obligated to consider any explanation a plaintiff may have for such failure such as poverty or lack of insurance."); see also Derrico v. Comm'r of Soc. Sec., Civil Action No. 1:09-cv-03138, 2011 WL 1157690, at *20 (N.D. Ga. Mar. 29, 2011) (noting the record did not support claimant's argument that the ALJ found gaps in treatment because claimant did not have insurance or an income to obtain treatment, as there was no evidence claimant failed to seek treatment for his conditions based on an inability to pay for the treatment).  To be clear, even if the ALJ considered Plaintiff's lack of insurance as relevant, this was not the only evidence he considered in determining Plaintiff's residual functional capacity.  Of particular note, ALJ Casher found the medical evidence of record did not support Plaintiff's allegations of disabling conditions.  Plaintiff's claim of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner.  I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 11th day of March, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA